
EOD
02/22/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: § | | |
| § | | |
| RONALD E. KANNARD, § | | Case No. 05-58012 |
|     Debtor. § | | |
| _____§ | | |
| § | | |
| SERVICE STEEL WAREHOUSE CO., LP, § | | |
|     Plaintiff, § | | |
| v. § | | |
| § | | Adv. No. 06-5002 |
| RONALD E. KANNARD, § | | |
|     Defendant, § | | |
| _____§ | | |
| § | | |
| HIRING PARTNERS, INC., § | | |
|     Intervenor-Plaintiff, § | | |
| v. § | | |
| § | | |
| RONALD E. KANNARD, § | | |
|     Defendant. § | | |

## **MEMORANDUM OPINION**

This matter is before the Court following the trial of the "Complaint to Determine Dischargeability of Debt" (the "Complaint") filed by Service Steel Warehouse Co., L.P. ("Service Steel") and the "Complaint in Intervention" filed by Hiring Partners, Inc. ("Hiring Partners"). In the Complaint and Complaint in Intervention, Service Steel and Hiring Partners seek a determination that the Debtor's respective obligations to them are non-dischargeable pursuant to 11 U.S.C. §523(a)(4). The Court, having considered Service Steel's Complaint, the Complaint in Intervention, the admissible evidence, the stipulations of the parties, and the arguments presented by counsel, makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a),

made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.

## I. JURISDICTION

A proceeding seeking a determination of the dischargeability of a debt raises a core matter over which this Court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(I) and 1334.

## II. FINDINGS OF FACT[1]

### A. Procedural Background

Ronald E. Kannard (the "Debtor") initiated this bankruptcy case by filing a petition for relief pursuant to Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on November 30, 2005. The Debtor listed his 100% interest in Stovall Fab and Machine, Inc. ("Stovall") in his bankruptcy schedules, which he valued at $625,000. The Debtor also listed numerous liabilities to creditors arising from his guaranties of Stovall's corporate debts. However, in a Comment by Counsel for Debtor Relating to Stovall Fab and Machines, which was filed on December 7, 2005, counsel for the Debtor represented that Stovall was insolvent and was in the process of winding down its operations.[2]

In January 2006, the Chapter 7 trustee notified the Debtor's creditors that the Debtor's bankruptcy estate included assets that would be liquidated and distributed to creditors. Service Steel and Hiring Partners subsequently filed claims against the Debtor.

---

[1] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. Likewise, to the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

[2] The Court entered an Agreed Order Abandoning Estate's Interest in Stovall Fab and Machines, Inc. on January 10, 2006.

In particular, Service Steel filed a Proof of Claim on February 21, 2006, asserting an unsecured claim in the amount of $65,872.82 against the Debtor; and Hiring Partners filed a Proof of Claim on March 14, 2006, asserting an unsecured claim in the amount of $25,000 against the Debtor.

Service Steel filed its Complaint on March 3, 2006. Service Steel thereby seeks a judgment that its claim against the Debtor is non-dischargeable pursuant to §523(a)(4) of the Bankruptcy Code. Hiring Partners filed its Complaint in Intervention on April 17, 2006, seeking a judgment that $21,793.30 of its claim against the Debtor is non-dischargeable pursuant to Bankruptcy Code §523(a)(4). The Debtor denies that the Plaintiffs are entitled to the relief they seek.

The Court entered the Plaintiff's and Intervening Plaintiff's Pre-Trial Order on May 18, 2007. The Court called this case for trial on May 22, 2007, at which time the parties submitted their exhibits and a set of stipulated facts. The parties announced that they had agreed to submit the case to the Court based solely on their exhibits, the stipulated facts, and their trial briefs. The Debtor and the Plaintiffs subsequently submitted trial briefs to the Court, and the Court heard the parties' arguments on September 25, 2007.

### B. General Factual Background

The Debtor was the sole shareholder, director, and officer of Stovall at all relevant times. Stovall acted as a general contractor and/or subcontractor for Norbord, Inc. ("Norbord") on several construction projects. The projects were collectively known as the "Norbord Heat Energy Burner Projects." The projects ranged from fabricating a drop-out box to welding ducts.

3

One of the projects was assigned Project #05-0379, which is described on Norbord's purchase order to Stovall as a "Drop-Out Box Per Norbord Drawings." Stovall was to receive a total of $145,000 for this project. Norbord's purchase order, which the parties agree is a contract for the improvement of real property, provided that 70% of this amount ($101,500) would be paid with the purchase order and that the remaining 30% ($43,500) would be paid upon "successful delivery."

Hiring Partners supplied labor to Stovall that was used on several projects, including Project #05-0379. Service Steel delivered steel construction materials to the Debtor for use on several of the projects, including Project #05-0379. These materials were incorporated into Project #05-0379.

On August 22, 2005, Stovall delivered Project #05-0379 to Norbord and invoiced Norbord for the $43,500 that remained due and owing to it for Project #05-0379. Stovall received payment in full from Norbord and deposited the funds into its business account at Pilgrim Bank on September 8, 2005.

The Debtor admits that Stovall had received invoices in the total amount of $100,067.78 for labor and materials relating to Project #05-0379 by the time Stovall received payment in full from Norbord or shortly thereafter. These invoices included three invoices for materials supplied by Service Steel in the total amount of $12,549. The Debtor calculated a "profit" in the amount of $44,932 for Project #05-0379 by subtracting his total job cost ($100,067.78) from the total payment received from Norbord ($145,000).

The Debtor stipulated that he intentionally or knowingly used or disbursed the "profits" Stovall realized on Project #05-0379. In particular, the Debtor admits making

4

23 payments from Stovall's account totaling $35,396.20 from August 2005 through February 2006. These payments include numerous loan and interest payments totaling more than $14,000, withdrawals of more than $3,000 from ATMs in foreign countries, a payment of $7,500 to the Debtor's bankruptcy attorney in December 2005 and a payment of $700 to the Chapter 7 trustee in February 2006.

Stovall employed a production manager, a bookkeeper, and a "Norbord Maintenance Supervisor/PO Issuer," among others. The Plaintiffs' invoices were addressed to Stovall, not the Debtor. Significantly, as of the time the Debtor calculated Stovall's "profits," Stovall had not yet received invoices from Hiring Partners relating to Project #05-0379. The invoices for Hiring Partners' work on the various projects are dated from September 26, 2005 through October 31, 2005.[3]

Stovall has not paid Service Steel or Hiring Partners for all of the materials and labor they supplied for Project #05-0379. According to the stipulation of the parties, $12,549 remains due and owing to Service Steel for the steel construction materials it supplied to the Debtor for Project #05-0379. Additionally, according to the stipulation of the parties, $22,000 remains due and owing to Hiring Partners for the labor it supplied to Stovall for Project #05-0379. The account at Pilgrim Bank was Stovall's only bank account, and all funds in Stovall's account were depleted by April 2006.

### III. LEGAL DISCUSSION

The Plaintiffs contend that their unpaid claims relating to Project #05-0379 should be declared to be nondischargeable pursuant to §523(a)(4) of the Bankruptcy Code. This provision excepts from discharge debts "for fraud or defalcation while acting in a

---

[3] The invoices supporting Hiring Partners' claim were issued weekly and contain hourly charges for various individuals who worked on projects for Stovall. Although the invoices do not identify any particular project, the parties have stipulated that the invoices relate to Project #05-0379.

5

fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. §523(a)(4). The Plaintiffs contend that the Debtor committed fraud or defalcation while acting in a fiduciary capacity with the fiduciary relationship arising under Texas Property Code §§ 162.001 through 162.031, which is commonly described as the Texas Construction Trust Fund Act (the "TCTFA").

Under the TCTFA, all monies paid to a contractor or subcontractor under a construction contract and all loan proceeds received by an owner, contractor or subcontractor for improvement of specific real property in Texas are deemed to be "trust funds" for the benefit of those persons furnishing labor or materials for the construction. TEX. PROP. CODE § 162.001. The parties do not dispute that the Debtor in this case is an "owner" who received "trust funds" and thus became a "trustee" under the TCTFA Statute. *See id.* at §§ 162.001, 162.002. The parties also do not dispute that the Plaintiffs qualify as beneficiaries of the trust because they provided services and materials in connection with Project #05-0379. *See* TEX. PROP. CODE § 162.003. Moreover, the Debtor admits that the "profits" Stovall received from Norbord for Project #05-0379 were not spent on "actual expenses directly related to the construction or repair of the improvement" and, therefore, that the affirmative defense to prosecution for the misapplication of trust funds set forth in TEX. PROP. CODE §162.031(b) does not apply.

The question for the Court is whether the Plaintiffs have established, by a preponderance of the evidence, that the debts in issue fall within the §523(a)(4) exception to discharge. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110, 114 (5th Cir. 1992). Significantly, the scope and concept of a fiduciary under §523(a)(4) is a matter of federal law. *Angelle v. Reed (In re*

6

*Angelle)*, 610 F.2d 1335, 1338 (5th Cir. 1980). The TCTFA's characterization of any contractor who receives construction payments as a "trustee" is not determinative. *See Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583, 592 (5th Cir. 1987). Rather, the Fifth Circuit concluded in *Nicholas* that the TCTFA creates fiduciary duties encompassed by §523(a)(4) only if trust funds were *knowingly or intentionally* paid for more than the actual expenses, or for expenses not "directly related" to the construction or repair project. *In re Nicholas*, 956 F.2d at 113. In the absence of a willful or knowing fraudulent misappropriation of funds under the TCTFA, the statute "falls far short" of creating a classic express trust arrangement that would create a fiduciary relationship between a contractor and its subcontractors within the scope of §523(a)(4). *In re Nicholas*, 956 F.2d at 113.

In this case, the parties have not provided the Court with any testimony or affidavits regarding the Debtor's knowledge or intent. The stipulated facts show that the Debtor believed that Stovall had realized a profit of $44,932 for Project #05-0379. The term "profit," which is used in the parties' stipulation, is commonly understood to mean "[t]he excess of revenues over expenditures in a business transaction." *See* BLACK'S LAW DICTIONARY (8th ed. 2004). Indeed, the figure for the "profits" the parties agree that the Debtor spent was calculated by deducting the invoices Stovall had received as of approximately September 30, 2005, including the three invoices from Service Steel, from the total amount received from Norbord. Thus, based on the stipulated facts, the Plaintiffs have failed to establish by a preponderance of the evidence that the Debtor knowingly or willfully neglected a duty to the Plaintiffs within the meaning of §523(a)(4) when he began spending the $44,932 in "profit." Moreover, it appears from the record

7

that the Debtor may have been out of the country when Hiring Partners' outstanding invoices were received by Stovall.

### IV. CONCLUSION

For all the foregoing reasons, the Court concludes that the Plaintiffs have failed to establish a claim for non-dischargeability against the Debtor under §523(a)(4) of the Bankruptcy Code.. The Plaintiffs have not established, by a preponderance of the evidence, the mental culpability on the part of the Debtor as required by §523(a)(4) of the Bankruptcy Code. Accordingly, the Plaintiffs' claims against the Debtor will be denied. The Court will enter a Judgment consistent with this Memorandum Opinion.

Signed on 2/22/2008

*Brenda T. Rhoades*    MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

8